PALMER, Appellant, vs. JANESVILLE IMPROVEMENT COMPANY, Respondent.

*April 3—May 8, 1928.*

*Negligence: Public buildings: Roof not designed for use by frequenters of building: Contributory negligence.*

1. An employee of a tent and awning company who was measuring windows on the second floor of a public building is *held* guilty of negligence in jumping onto the steel canopy of the entrance to the building with a roof composed of glass, and is precluded from recovering for injuries sustained by falling through the roof. p. 609.
2. Within the meaning of sub. (12), sec. 101.01, Stats., the owner of the building was not guilty of negligence in maintaining the canopy, sec. 101.06, requiring the owner of a public building properly to construct, repair, or maintain it, being inapplicable as to maintenance of a roof not designed for use by the occupants or frequenters of the building. p. 610.
3. To authorize a recovery of damages there must first be found some duty resting on the person against whom liability is claimed which he has failed to perform. p. 610.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Action commenced the 4th day of October, 1927; judgment entered December 12, 1927. Personal injury. The defendant was the owner of a building on one of the principal business streets of Janesville, known as the Beverly Theater Building. Over the entrance to the building was a canopy constructed of steel, with a roof composed of glass either stained or painted, black on the top and green on the under side. Above this canopy there was erected a large electric sign with the word "Beverly" in electric lights. Em-

ployees of the lighting company and of the theater occasion-
ally went upon this roof for the purpose of making repairs
and to attend to the upkeep of the sign and the building. The
situation is best disclosed by the reproduction herewith of
part of defendant's Exhibit 8.

The plaintiff, an employee of a tent and awning company,
was called to the building on June 10, 1927, to measure the
windows over the canopy upon the second floor of the build-
ing. Plaintiff testified:

"There was an awning wanted on this window, and two

windows to the north. I looked out and saw the top of the awning frames, and I saw I would have to twist my body to stand on the window ledge, and I thought I couldn't do the job accurately that way. I glanced down, saw the roof, and it appeared to be covered with sheet steel. I stepped on it from the window ledge and fell through."

From the wooden part of the window sill down to the canopy it is three feet, and from the stone portion of the window sill down to the canopy it is two and a half feet. It is quite apparent that the plaintiff either jumped down or slid down onto the top of the roof. He sustained severe injuries from breaking through the top of the canopy. Other facts will be stated in the opinion.

At the close of the plaintiff's testimony defendant's motion for a nonsuit was granted. From the judgment the plaintiff appeals.

For the appellant there was a brief by *Nolan, Dougherty, Grubb & Ryan* of Janesville, and oral argument by *W. H. Dougherty.*

For the respondent there was a brief by *George G. Sutherland,* attorney, and *Jeffris, Mouat, Oestreich, Avery & Wood,* of counsel, all of Janesville, and oral argument by *O. A. Oestreich.*

ROSENBERRY, J. It was admitted upon the trial that the building in question was a public building within the statutory definition. Sec. 101.01 (12). Sec. 101.06, Stats., requires every owner of a public building to so construct, repair, or maintain the same as to render it safe. We do not perceive how this statute can be invoked to require the owner of a public building to maintain the roof of a building not designed for use by occupants or frequenters of the building in such condition as to be safe for workmen to jump on it or step down on it from a height of two and a half feet.

The plaintiff did not go to the place in question at the request or with the knowledge of the owner of the building. He was invited to go there by one of the occupants of the

second floor, for whom services were to be rendered. There is nothing to indicate that the top of the canopy is a passageway for pedestrians. In fact every circumstance, including the presence of planks probably left there by prior workmen, indicated just the opposite. There was no invitation, express or implied, on the part of the owners to any one to use this place for any purpose, and one proposing to use it was required at his peril to ascertain its nature, and its ability to withstand the use to which it was to be put. There seems to be a growing notion that there can be no injury without some one being required to respond in damages. The standards of ordinary care have been advanced in recent years beyond anything thought of or dreamed of thirty years ago. Without saying or intimating that they have been advanced too far, it is not too much to say that there must first be found some duty resting upon the person against whom liability is claimed, which he has failed to perform, before there can be a recovery for damages for violation of that duty.

The trial court was right in holding the plaintiff guilty of contributory negligence. It is equally apparent that there is nothing in the evidence which indicates that the defendant was guilty of negligence.

*By the Court.*—Judgment affirmed.